KAW DEHYDRATING COMPANY, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10334–77. Filed May 20, 1980.

---

[29]In so holding, we do not reach the question as to whether such payments for future services would, in fact, be deductible.

*Murray F. Hardesty,* for the petitioner.
*James E. Cannon,* for the respondent.

FORRESTER, *Judge:* Respondent has determined a deficiency in petitioner's Federal income tax for the calendar year 1973 in the amount of $29,693.62. The sole remaining issue is whether the amount of $61,739.06 claimed deductible as accrued bonuses for two of petitioner's controlling cash basis shareholders was constructively received by them within petitioner's taxable year and 2½ months thereafter within the intendment of section 267.[1]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioner is a corporation organized and existing under the laws of the State of Kansas, the principal office of which was in Topeka, Kans., at the time the petition herein was filed. Petitioner's U.S. Corporation Income Tax Return for the year in issue was filed with the Internal Revenue Service Center, Southwest Region, Austin, Tex.

Petitioner was engaged in the business of grinding, dehydrating, and distributing cereal grasses and alfalfa, and it kept its books and reported its income on an accrual basis method.

During the year in issue, and for 2½ months thereafter, its officers and directors (and their stockholdings) were:

|  |  |  | Common stock | Preferred stock |
| --- | --- | --- | --- | --- |
| R. M. Bunten, Jr.... | president | director | 46.67% | 12.50% |
| W. W. Bunten........ | vice president | director | 46.67% | 12.50% |
| R. M. Bunten......... | treasurer | director | 6.66% | 60.00% |
| M. R. Bunten......... | not an officer, | not a director | 0 | 15.00% |

R. M. Bunten, Jr., and W. W. Bunten are brothers. R. M. and M. R. Bunten are their father and mother, respectively. R. M. Bunten, Jr., and W. W. Bunten reported their income on the basis of a calendar year and the cash method of accounting.

---

[1]Unless otherwise specified, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.

The minutes of a special meeting of petitioner's board of directors held on October 3, 1973, read, inter alia:

Operations to date were reviewed and the prospects for substantial profits for the operating year looked encouraging at this time. These profits stem from unusually high prices for farm products including alfalfa. Costs were also substantially higher but not in proportion to the market prices. It was cautioned that future operations could well require a $70.00 average price to carry the increases in labor, land and parts.

\* \* \* \* \* \* \*

The following bonuses for plant employees were discussed for the year ending Dec. 31, 1973. The final amount will be subject to a $1.00 per ton capital improvement charge.

*Robert M. Bunten, Jr.*—Fifteen (15%) per cent of the profit from all operations of the company after all expenses and before bonuses and Federal and State Taxes.

*William W. Bunten*—Twelve and one half (12½%) per cent of the profit from all operations of the company after all expenses and before bonuses and Federal and State Taxes.

These same minutes also contained the following resolution:

The following resolution requested by the New York Life Insurance Co. was unanimously adopted.

Be it resolved, that the Kaw Dehydrating Co., Inc. request that the one year term rider be added to New York Life Insurance Co. policies 27 514 916 on the life of Robert M. Bunten, Jr. and 27 514 777 on the life of W. W. Bunten.

Said minutes also noted action taken regarding a semiannual dividend in the following language:

It was further decided that the semi-annual dividend due on Dec. 1, 1973 not be declared payable. This motion was made by R. M. Bunten, duly seconded and unanimously passed.

No definitive action, such as adopting a corporate resolution to declare the bonuses in issue, was ever taken by the directors, nor is there evidence that the directors ever approved them.

The bonuses in issue were not timely credited to a personal drawing account or a personal salary account of either Bunten, nor physically set aside for them.

An audit adjustment reflecting the bonuses was made in petitioner's ledger as of December 31, 1973, but the date this adjustment was made is neither stipulated nor agreed upon. The first crediting of the bonuses to the Buntens' individual accounts on petitioner's books was made on June 30, 1974.

On June 15, 1974, petitioner issued demand promissory notes evidencing the above bonuses to its president and vice president

in the respective amounts of $33,675.85 and $28,063.21, which notes were dated June 15, 1974, and bore 10-percent interest after that date. On July 15, 1974, petitioner issued checks to its president and vice president in payment of these notes. Petitioner reported these bonuses for employment tax purposes on its third quarter 1974 Form 941.

R. M. Bunten, Jr., and W. W. Bunten reported their respective bonuses, in the amounts noted above, on their individual income tax returns for their taxable years each ending December 31, 1974.

The bonuses here in issue were deducted on petitioner's income tax return for the year 1973 as follows:

R. M. Bunten, Jr............... $33,675.85
W. W. Bunten ....................28,063.21

In the same minutes of October 3, 1973, identified above, bonuses were "discussed" for employees Witte, Doud, and Callahan. Witte's bonus was paid in August and September 1974, and Doud's bonus was paid on September 12, 1974, but the record is silent as to whether the Callahan bonus was ever paid, and if not, why not.

Respondent's statutory deficiency notice reads, in pertinent part:

The deduction of $61,739.06, claimed for accrued officer bonuses is not allowable under Section 267 of the Internal Revenue Code because it was not paid within two and one-half months after the close of the tax year ended December 31, 1973, nor was it constructively received by the officers within the two and one-half month period. Accordingly, your taxable income is increased $61,739.06.

## OPINION

The issue involved in the instant case is whether the petitioner is prohibited under section 267 from deducting the bonuses here in issue.

The relevant parts of section 267 follow:

SEC. 267. LOSSES, EXPENSES, AND INTEREST WITH RESPECT TO TRANSACTIONS BETWEEN RELATED TAXPAYERS.

(a) DEDUCTIONS DISALLOWED.—No deduction shall be allowed—

* * * * * * *

(2) UNPAID EXPENSES AND INTEREST.—In respect of expenses, otherwise deductible under section 162 or 212, or of interest, otherwise deductible under section 163,—

(A) If within the period consisting of the taxable year of the taxpayer and 2½ months after the close thereof (i) such expenses or interest are not paid, and (ii) the amount thereof is not includible in the gross income of the person to whom the payment is to be made; and

(B) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and

(C) If, at the close of the taxable year of the taxpayer or at any time within 2½ months thereafter, both the taxpayer and the person to whom the payment is to be made are persons specified within any one of the paragraphs of subsection (b).

Petitioner has not contested that the requirements of section 267(a)(2)(B) and (C) have been met. It is respondent's position that the Buntens' bonuses are not deductible because the requirements of section 267(a)(2)(A) are also met, because the amounts in question were not actually paid to the Buntens nor constructively paid and includable by them in their gross income under the doctrine of constructive receipt "within the period consisting of the taxable year of the taxpayer and 2½ months after the close thereof." Respondent's principal argument is that the bonuses simply were not due and owing to the Buntens.

To sustain their contention that the deductions for the bonuses in issue were allowable, the petitioner has the burden of proving that at least one of the three conditions specified in subparagraphs (A) through (C) of section 267(a)(2) did not exist. *Hyplains Dressed Beef, Inc. v. Commissioner*, 56 T.C. 119 (1971); *Lacy Contracting Co. v. Commissioner*, 56 T.C 464 (1971); *Young Door Co., Eastern Division v. Commissioner*, 40 T.C. 890 (1963).

As noted, petitioner is only contesting whether or not the requirement (which is a negative one) of section 267(a)(2)(A) did exist. Petitioner does not dispute that the amounts in question were not actually paid to the Buntens until later than 2½ months after the close of petitioner's taxable year but contends that they were includable by the Buntens within such period by virture of the doctrine of constructive receipt. Sec. 1.267(a)–1(b)(1)(iii),[2] Income Tax Regs.

The term "constructive receipt" is not defined by any section

---

[2]Sec. 1.267(a)–1(b)(1)(iii). If, within the taxpayer's taxable year within which such items are accrued by the taxpayer and 2½ months after the close thereof, the amount of such items is not paid and the amount of such items is not otherwise (under the rules of constructive receipt) includible in the gross income of the payee.

of the Code, but we have in the past approved the following regulatory definition (*Benes v. Commissioner*, 42 T.C. 358, 381 (1964), affd. 355 F.2d 929 (6th Cir. 1966), cert. denied 384 U.S. 961 (1966); *Young Door Co., Eastern Division v. Commissioner*, *supra* at 894), and we again do so here. Sec. 1.451–2, Income Tax Regs.:

Sec. 1.451–2 Constructive receipt of income.

(a) *General rule.* Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. * * *

The doctrine must be sparingly used because courts have been mindful that the doctrine may be used to require a person to pay tax on an item which is not in hand, therefore, they have applied it sparingly. *Jerome Castree Interiors, Inc. v. Commissioner*, 64 T.C. 564 (1975), affd. in an unpublished opinion 539 F.2d 714 (7th Cir. 1976); *R. E. Hughes, Jr. v. Commissioner*, 42 T.C. 1005 (1964); *Young Door Co., Eastern Division v. Commissioner*, *supra; Basila v. Commissioner*, 36 T.C. 111 (1961). Its application presents a factual question. *R. E. Hughes, Jr. v. Commissioner*, *supra.*

Respondent's principal contention is that the bonuses here simply were not due and owing to the Buntens. Petitioner argues that the minutes of the October 3, 1973, meeting of petitioner's board of directors fully satisfy such requirement. We disagree.

Such minutes constitute the only timely written record on petitioner's books regarding these bonuses, since no personal salary account entry nor any personal drawing account entry was made for either Bunten, and the first crediting of the bonuses to their individual accounts occurred on June 30, 1974, well beyond the grace period of 2½ months. An audit adjustment reflecting the bonuses was shown in the general ledger as of December 31, 1973, but the date this audit adjustment was recorded is neither stipulated nor agreed to, and petitioner has not satisfied its burden of proving that it was made within the prescribed period.

Since the October 3, 1973, minutes are the only definitive

written record which we have found to be timely, we have quoted them in pertinent part in our findings. It is clear that petitioner was familiar with the form of a proper, valid, and binding resolution because such a one was adopted regarding the riders to be added to the life insurance policies covering petitioner's president and vice president. Also, definitive and conclusive action was taken regarding the declaration of petitioner's semiannual dividend. Yet, when the bonuses here in issue were being dealt with, the minutes simply reveal that they "were discussed." It is true that a percentile was mentioned as regards each of these bonuses, but again they were simply discussed. No definitive action was taken.

It is petitioner's position, in short, that the minutes of October 3, 1973, operated to set the bonuses apart for the Buntens, in effect, credited them to their accounts and otherwise made them available so that they could have been drawn upon at any time if notice of intention were given; however, we cannot help but notice that on June 15, 1974, when the Buntens were given notes evidencing these bonuses, that said notes bore 10-percent interest *after that date.* Since the record is silent, we must conclude that no interest was running or payable prior to June 15, 1974, and this is inconsistent with petitioner's position of constructive receipt.

A further inconsistency with such position is demonstrated by the Callahan bonus which was identified and authorized—if so, but we think not—in an identical fashion to the Bunten bonuses in the minutes of the October 3, 1973, special meeting of petitioner's board of directors. The record is silent as to whether the Callahan bonus was ever paid, although the stipulation does show that the Witte and Doud bonuses (also identically authorized—if so) were paid later in 1974. We must resolve this lack of evidence against petitioner and conclude that the authorization regarding Callahan was not regarded as binding by petitioner, and that, therefore, his bonus was not paid.

As we noted in *R. E. Hughes, Jr. v. Commissioner, supra* at 1012: "The determination of this question [constructive receipt] must be resolved largely on the facts in any given case." See also *Avery v. Commissioner,* 292 U.S. 210 (1934); *Lacy Contracting Co. v. Commissioner, supra; F. D. Bissett & Son, Inc. v. Commissioner,* 56 T.C. 453, 461 (1971).

We have found no case as thin for taxpayer regarding the

doctrine of constructive receipt as the instant case. The closest case on the facts is *Jerome Castree Interiors, Inc. v. Commissioner, supra,* where the doctrine depended upon a resolution properly authorizing bonuses but providing that they were not to be paid if to do so would impair the financial condition of the corporation. Petitioner, there, presented a many-pronged argument that small, closely held corporations were not to be held to the technical niceties that larger corporations could afford. Such arguments did not persuade us there nor do they persuade us here. In *Jerome Castree Interiors, Inc. v. Commissioner, supra,* the bonuses were properly resolved and authorized with simply a later condition imposed upon their payment. In the instant case, as we have noted, there was no resolution nor any subsequent, timely corporate record to support the proposition that a binding resolution had been intended.

In view of all of the above, we support the respondent's determination for the year 1973.

*Decision will be entered for the respondent.*