F. D. Bissett & Son, Inc., Petitioner *v.* Commissioner of Internal Revenue, Respondent

Docket No. 295–69.     Filed June 1, 1971.

*Jeff D. Batts*, for the petitioner.
*Harvey S. Jackson*, for the respondent.

IRWIN, *Judge:* The Commissioner determined deficiencies in petitioner's income tax as follows:

| Taxable year | Deficiency |
|---|---|
| 1965 | $1,319.27 |
| 1966 | 2,159.02 |
| 1967 | 1,488.00 |

The issue for our determination is whether section 267(a)(2)[1] operates so as to disallow deductions for accrued interest, otherwise allowable under section 163, in the amounts of $1,100[2] in 1965, $5,500 in 1966, and $3,100 in 1967.

### FINDINGS OF FACT

The parties stipulated some facts which together with the exhibits attached thereto are incorporated herein by this reference.

F. D. Bissett & Son, Inc. (hereinafter petitioner), which maintained its books of account and records and compiled its income tax returns on an accrual method of accounting during the years at issue, timely filed its corporate income tax returns for the calendar years 1965 and 1966 with the district director of internal revenue, Greensboro, N.C., and for 1967 with the director, Southeast Service Center, Chamblee, Ga. At all times pertinent to this case, petitioner maintained its principal office and place of business in Spring Hope, N.C.

Petitioner was incorporated under the laws of North Carolina on January 31, 1955, by F. D. Bissett for the purpose of carrying on in corporate form the general mercantile and farm supply business which he had developed.

On the date of its incorporation, petitioner issued two classes of common stock as follows:

| Number of shares | Par value | Description |
|---|---|---|
| 50 | $100 per share | Class A voting. |
| 950 | 100 per share | Class B nonvoting. |

The ownership of this stock during the years in question is described in the following table:

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

[2] Respondent conceded that petitioner is entitled to deduct $3,000 in interest accrued to the Estate of F. D. Bissett.

| Stockholder | Relation to F. D. Bissett, deceased, or to petitioner | Number of class A shares | Number of class B shares |
|---|---|---|---|
| Estate of F. D. Bissett, deceased | | 50 | 398 |
| Navada W. Bissett | Widow | | 1 |
| Lucille P. Mullen | Bookkeeper | | 10 |
| Maxine B. Warren | Daughter | | 60 |
| Ted L. Bissett | Son | | 481 |
| Total | | 50 | 950 |

In addition to the stock, petitioner also issued on January 31, 1955, debenture bonds in the face amount of $275,000 to F. D. Bissett. These debentures which are due on January 1, 1975, provided for interest at the rate of 2 percent per year payable on January 1 of each year after issue.

As of December 31 of each of the years involved herein, these debentures were owned as follows: [3]

| Owner | Relation to F. D. Bissett, deceased | Face amount as of 12/31/65 | Face amount as of 12/31/66 | Face amount as of 12/31/67 |
|---|---|---|---|---|
| Estate [1] of F. D. Bissett, deceased | | $150,000 | 0 | 0 |
| Ted L. Bissett | Son | 25,000 | $80,000 | $85,000 |
| Betty L. Bissett | Daughter-in-law | 15,000 | 20,000 | 25,000 |
| Navada W. Bissett | Widow | 15,000 | 45,000 | 30,000 |
| Maxine B. Warren | Daughter | 55,000 | 105,000 | 105,000 |
| Bradley Warren [2] | Grandson | 5,000 | 5,000 | 5,000 |
| David Warren [2] | Grandson | 5,000 | 5,000 | 5,000 |
| Scott Warren [2] | Grandson | 5,000 | 5,000 | 5,000 |
| Danny Bissett [2] | Grandson | 0 | 10,000 | 15,000 |
| Total | | 275,000 | 275,000 | 275,000 |

[1] Ted L. Bissett (hereinafter Ted) was duly appointed and qualified as executor of the estate which he administered during the years in question.
[2] These individuals were minors during the period involved herein.

Prior to his death, F. D. Bissett had served as petitioner's president. Thereafter, on or about July 22, 1964, the following individuals were elected by petitioner's board of directors to serve as petitioner's officers:

| Name | Office |
|---|---|
| Ted L. Bissett | President and treasurer |
| Maxine B. Warren | Vice president |
| Navada W. Bissett | Secretary |

These persons retained their corporate positions throughout the years 1965 through 1967.

---

[3] F. D. Bissett gave certain debentures to various member of his family over the period Jan. 1, 1956, to July 7, 1964, the date of his death. Thereafter, some of the debentures passed to them by testamentary devise.

Lucille P. Mullen (hereinafter Lucille) was first employed by F. D. Bissett approximately 27 years prior to the date of the trial herein. She continued to work for him in the employ of petitioner where she served as bookkeeper and took care of all the office work. Moreover, she had the authority to write checks for petitioner. Ted, as president, supervised Lucille in her work during the years at issue.

Lucille was responsible for keeping the records pertaining to the debentures of petitioner up to date. She also possessed the authority to pay the interest thereon at any time after it became due.

Shortly after December 31 of each of the years involved in this case, Lucille, as part of her duties in connection with the debentures, computed the interest accrued thereon for the respective year just ended and posted the total amount of such accrued interest ($5,500) to a ledger account maintained by petitioner and entitled "Accrued Expense."

The parties are in agreement that $5,500 is the correct amount of interest accrued on the debentures as of December 31 of each of the years at issue.

At the time Lucille computed the interest accrued for each taxable year, she also prepared memoranda indicating the amount of interest due to each of the debenture holders. These memoranda were attached by paper clip to the "Accrued Expense" ledger account sheets described above. Lucille has followed this procedure of drafting memoranda in connection with the interest due to each debenture holder since approximately 1955.

The following information was listed on these memoranda for the years involved:

| Name | Bond interest due in 1966 | Bond interest due in 1967 | Bond interest due in 1968 |
|------|-------|-------|-------|
| Maxine B. Warren | $1,100 | $2,100 | $2,100 |
| Ted L. Bissett | 500 | 1,600 | 1,700 |
| Navada W. Bissett | 300 | 900 | 600 |
| Betty L. Bissett | 300 | 400 | 500 |
| Bradley Warren | 100 | 100 | 100 |
| David Warren | 100 | 100 | 100 |
| Scott Warren | 100 | 100 | 100 |
| Estate of F. D. Bissett, deceased | 3,000 | 0 | 0 |
| Danny Bissett | 0 | 200 | 300 |
| Total | 5,500 | 5,500 | 5,500 |

Petitioner issued checks in the following amounts on the dates indicated in satisfaction of the interest accrued on the debentures held by the named individuals as of December 31 of each of the years at issue:

| Payee | Check number | Date issued | Amount | Payment of interest accrued as of Dec. 31— |
|-------|------|------|------|------|
| Maxine B. Warren | 22102 | 2/ 5/66 | $1,100 | 1965 |
| Bradley Warren | 22103 | 2/ 5/66 | 100 | 1965 |
| David Warren | 22104 | 2/ 5/66 | 100 | 1965 |
| Scott Warren | 22105 | 2/ 5/66 | 100 | 1965 |
| Estate of F. D. Bissett, deceased [1] | 22725 | 10/ 7/66 | 3,000 | 1965 |
| Maxine B. Warren | 23256 | 4/13/67 | 1,600 | 1966 |
| Bradley Warren | 23257 | 4/13/67 | 100 | 1966 |
| David Warren | 23258 | 4/13/67 | 100 | 1966 |
| Scott Warren | 23259 | 4/13/67 | 100 | 1966 |
| Maxine B. Warren | 24107 | 12/31/67 | 500 | 1966 |
| Maxine B. Warren | 24096 | 2/14/68 | 2,100 | 1967 |
| Bradley Warren | 24097 | 2/14/68 | 100 | 1967 |
| David Warren | 24098 | 2/14/68 | 100 | 1967 |
| Scott Warren | 24099 | 2/14/68 | 100 | 1967 |

[1] The fiduciary of this estate used the accrual method of accounting and prepared the income tax returns thereIor on the basis of a taxable year ended June 30.

At all times pertinent to this case, petitioner maintained as part of its books and records a personal account pertaining to Ted entitled "Gen. Ledger Account" and an accrued personal living expense account entitled "Ted Bissett." This latter account was debited throughout the years involved by the amounts of personal living expenses petitioner paid for the benefit of Ted, his wife Betty, and his son Danny. These expenses included items such as medical expenses, personal taxes, cash advances, and general merchandise. This same account was also credited with certain amounts of income of these same three individuals. The income credits included dividends and interest on publicly traded securities, interest on savings accounts, salaries and bonuses paid by petitioner, income tax refunds, farm income, and interest on the debenture bonds of petitioner.

The aforementioned general ledger account was usually credited with Ted's interest on petitioner's bonds and his bonuses. It was set up on the advice of Eugene Stone, petitioner's auditor, in order to prevent distortion at the end of petitioner's accounting year of its accounts receivable. If these two items were credited to the personal expense account, which was actually an account receivable of petitioner, there would be a large credit balance at year's end that was not attributable to merchandise sold, but to bond interest and bonuses.

Lucille, who had full authority and discretion to make all entries, both debits and credits, to these two accounts in such manner and at such times as she determined, made the following credit entries therein in connection with the interest in question:

| Account | Date of credit [1] | Amount |
|---|---|---|
| Ted Bissett personal living expense account | 12/31/66 | $500 (Ted) [2]<br>300 (Betty) |
| General ledger account | 12/30/67 | 1,100 (Ted)<br>400 (Betty)<br>200 (Danny) |
| General ledger account | 3/22/68 | 1,700 (Ted)<br>500 (Betty)<br>300 (Danny) |

[1] The interest credited had been accrued by petitioner as of December 31 of the year preceding the year of credit.
[2] The parenthetical indicates the holder of the bond upon which the interest accrued.

Similarly, petitioner maintained at all times pertinent to this case as part of its books and records a personal living expense account pertaining to Navada W. Bissett entitled "Mrs. F. D. Bissett" and a personal account for her entitled "Gen. Ledger Account." These accounts were credited and debited in a manner identical to the way in which Ted's two accounts were maintained.

Lucille also had full authority and discretion with respect to these two personal accounts. On December 31, 1966, she credited $300 to the personal expense account entitled "Mrs. F. D. Bissett" in satisfaction of the interest accrued on the debentures held by her as of December 31, 1965.

On December 30, 1967, Lucille credited to Navada's general ledger account a total of $900 in satisfaction of the interest accrued as of December 31, 1966.

The $600 in interest accrued as of December 31, 1967, was credited to this same general ledger account by Lucille on March 23, 1968.

The following is a summary of Ted's personal living expense account maintained by petitioner for the first 2½ months of each of the years at issue:

| | Debits | Credits | Balance |
|---|---|---|---|
| | | **1966** | |
| January 1 (beginning) | | | $662.26 |
| January 31 | $1,681.90 | $482.10 | 1,862.06 |
| February 25 | 211.29 | 3.00 | 2,070.35 |
| March 15 | 2,277.19 | 535.00 | 3,812.54 |
| Total | 4,170.38 | 1,020.10 | |
| | | **1967** | |
| January 1 (beginning) | | | 2,776.60 |
| February 2 | 1,309.18 | 2,291.03 | 1,794.75 |
| March 3 | 747.88 | 538.92 | 2,003.71 |
| March 15 | 356.67 | 0 | 2,360.38 |
| Total | 2,413.73 | 2,829.95 | |
| | | **1968** | |
| January 1 (beginning) | | | 4,440.83 |
| January 31 | 6,485.24 | 2,430.88 | 8,495.19 |
| February 21 | 3,354.78 | 2,675.58 | [1] 9,174.39 |
| March 15 | 392.39 | 24,404.63 | (14,837.85) |
| Total | 10,232.41 | 29,511.09 | |

[1] A balance within parenthesis denotes a credit balance, that is, the indicated sum is due from petitioner.

The following is a similar summary of Navada's personal living expense account for the same period:

| | Debits | Credits | Balance |
|---|---|---|---|
| | | 1966 | |
| January 1 (beginning) | | | [1] ($6,834.30) |
| February 7 | $170.28 | $25.00 | (6,689.11) |
| March 1 | 53.13 | 25.00 | (6,660.98) |
| March 15 | 682.45 | 0 | (5,978.53) |
| Total | 905.86 | 50.00 | |
| | | 1967 | |
| January 1 (beginning) | | | (6,922.15) |
| February 15 | 283.59 | 25.00 | (6,663.56) |
| March 15 | 253.31 | 25.00 | (6,435.25) |
| Total | 536.90 | 50.00 | |
| | | 1968 | |
| January 1 (beginning) | | | (5,618.69) |
| February 8 | 1,858.59 | 1,011.67 | (4,801.77) |
| March 1 | 1,932.56 | 1,296.23 | (4,165.44) |
| March 15 | 180.77 | 0 | (3,984.67) |
| Total | 3,971.92 | 2,307.90 | |

[1] A balance within parenthesis denotes a credit balance, that is, the indicated sum is due from petitioner.

Lucille was vested with the authority and responsibility to determine alone when to pay to the debenture holders the interest due them on the debentures and whether payment was to be made by check or by credit to the accounts maintained by the petitioner for some of them.

The interest due on the debentures held by Maxine B. Warren and her three sons was normally paid by check. Such checks were delivered or issued by Lucille whenever Maxine asked for them.

The interest due on the debentures held by Ted and his family was normally credited to Ted's account by Lucille because that was Ted's request. She credited the interest to Ted's account at or near the end of the calendar year "to close out this account."

The interest due on the debentures held by Navada was normally credited to Navada's account by Lucille because that was Navada's request. She credited the interest to Navada's account on or about December 31 "to close out this account."

Each of the individual debenture holders reported on their tax returns as ordinary income interest received on the debentures as follows:

For its fiscal year ended June 30, 1965, the Estate of F. D. Bissett, deceased, reported $3,000. There was no interest reported for either fiscal year ended June 30, 1966, or June 30, 1967.

Ted L. Bissett and Betty L. Bissett reported on joint tax returns the amounts of $800, $2,000, and $2,200 for the years 1966, 1967, and 1968, respectively.

Navada W. Bissett reported the amounts of $300, $900, and $600 on her tax returns for the years 1966, 1967, and 1968, respectively.

Maxine B. Warren reported for the taxable years 1966, 1967, and 1968 the amounts of $1,600,[4] $1,600,[4] and $2,100, respectively.

Danny Bissett and Bradley, David, and Scott Warren did not file income tax returns for the taxable years 1966, 1967, and 1968 because none of them had gross income of $600 or more for any of those years.

Petitioner had sufficient funds readily available during the period January 1 through March 15 in each of the years at issue to have paid in full the interest due each debenture holder had a demand been made for cash payment.

## OPINION

Petitioner deducted $5,500 in interest accrued in connection with certain of its debentures in each of the taxable years 1965, 1966, and 1967. Respondent, in reliance upon section 267(a)(2),[5] disallowed these claimed interest deductions to the extent of $4,100[6] in 1965, $5,500 in 1966, and $3,100 in 1967.

The parties are in agreement that the provisions of sections 267(a)(2)(B) and (C) are satisfied. Moreover, they agree that the three requirements of section 267(a)(2) must coexist in order for it to operate so as to disallow the claimed interest deductions. See *Young Door Co., Eastern Division*, 40 T.C. 890 (1963); *Platt Trailer Co.*, 23 T.C. 1065 (1955); *Michael Flynn Manufacturing Co.*, 3 T.C. 932 (1944). Their dispute centers around section 267(a)(2)(A). We must decide,

---

[4] The bond interest owing Maxine B. Warren totaled $1,100 and $2,100 in 1966 and 1967, respectively. Moreover, she received checks in 1966 and 1967 in actual payment of this interest totaling $1,100 and $2,100, respectively. In light of these facts, we cannot explain stipulation 30(d) to the effect that Maxine B. Warren reported interest income in the amount of $1,600 in each of her taxable years 1966 and 1967.

[5] SEC. 267. LOSSES, EXPENSES, AND INTEREST WITH RESPECT TO TRANSACTIONS BETWEEN RELATED TAXPAYERS.

(a) DEDUCTIONS DISALLOWED.—No deduction shall be allowed—

* * * * * * *

(2) UNPAID * * * INTEREST.—In respect of * * * interest, otherwise deductible under section 163,—

(A) If within the period consisting of the taxable year of the taxpayer and 2½ months after the close thereof (i) such * * * interest * * * [is] not paid, and (ii) the amount thereof is not includible in the gross income of the person to whom the payment is to be made; and

(B) If, by reason of the method of accounting of the person to whom the payment is to be made the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and

(C) If, at the close of the taxable year of the taxpayer or at any time within 2½ months thereafter, both the taxpayer and the person to whom the payment is to be made are persons specified within any one of the paragraphs of subsection (b).

[6] Respondent conceded on brief the allowability of $3,000 in interest deducted by petitioner in 1965 with respect to the debentures held by the Estate of F. D. Bissett, deceased.

therefore, whether, within the period consisting of each taxable year at issue and 2½ months after the close thereof, petitioner paid the interest in question to the debenture holders and whether the amount thereof was includable in each respective debenture holders' gross income.

It is not disputed that actual cash payment is not required by the statute. Payment under circumstances constituting constructive receipt is sufficient. *Musselman Hub-Brake Co.* v. *Commissioner*, 139 F. 2d 65 (C.A. 6, 1943) ; *Young Door Co., Eastern Division, supra; Geiger & Peters, Inc.*, 27 T.C. 911 (1957) ; and *Liflans Corporation* v. *United States*, 390 F. 2d 965 (Ct. Cl. 1968).

It is well established that income is constructively received by a taxpayer when "it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it * * * if notice of intention to withdraw had been given." Sec. 1.451–2(a), Income Tax Regs. See also *Young Door Co., Eastern Division, supra; Geiger & Peters, Inc., supra; Platt Trailer Co., supra; James J. Cooney*, 18 T.C. 883 (1952). Since cases of constructive receipt involve essentially factual determinations, *Avery* v. *Commissioner*, 292 U.S. 210 (1934) ; *C. H. Becker*, 14 T.C. 361 (1950), our function here is to decide whether the facts of this case permit a finding of constructive receipt within the language of the regulations.

Respondent argues that the amounts of interest he disallowed were not actually or constructively received by the debenture holders within the 2½-month period described heretofore.

Petitioner advances several contentions. We shall only deal with petitioner's first argument because we feel it disposes of the issue before us. It is stated on brief as follows :

The determination of the amount of interest due the respective payees by the petitioner's bookkeeper who was authorized to make such determination and to pay the same by credit to the proper personal account at times within her discretion, or by issuance of check upon request of payees, who are aware that the interest was due constitutes constructive receipt of the amounts by the payees.

Preliminarily, we note that section 24(c) of the Internal Revenue Code of 1939, the progenitor of section 267(a)(2), was enacted for the purpose of eliminating the tax-avoidance practice that had developed of accruing unpaid expenses and interest payable to a closely related taxpayer who, because he is on the cash basis, reports no income. Because of this close relationship, payment might never be required or might be postponed until the related taxpayer has offsetting losses. *Young Door Co., Eastern Division, supra; Geiger & Peters, Inc.*,

*supra; Platt Trailer Co., supra;* H. Rept. No. 1546, 75th Cong., 1st Sess., p. 29 (1937) ; S. Rept. No. 1242, 75th Cong., 1st Sess. (1937).

We recognize that this purpose is not defeated in the instant case since the debenture holders included the interest in question in their individual income tax returns [7] for the taxable years following the years of accrual, viz, 1966, 1967, and 1968. We are also aware that such action by the debenture holders, while relevant and important in determining the deductibility to petitioner of the amounts of interest accrued, is not conclusive on that issue. *Musselman Hub-Brake Co. v. Commissioner, supra; Geiger & Peters, Inc., supra; Platt Trailer Co., supra.*

One further comment is in order before we analyze the facts herein. We will not and cannot distort the doctrine of constructive receipt by accepting petitioner's contention merely because no violence will be done on these facts to the congressional purpose underlying section 267(a)(2).

Petitioner agrees with respondent that constructive receipt consists of substantially more than the crediting to its "Accrued Expense" ledger of the gross amount of interest due annually on the outstanding debentures. Their disagreement centers on whether the simultaneous preparation by petitioner's bookkeeper of memoranda indicating the amount of interest due each debenture holder, which memoranda were attached by paper clip to this ledger account, constitutes the "substantially more" needed to bring this case within the ambit of the doctrine of constructive receipt.

On the particular facts herein, we hold for petitioner.

We have described in our Findings of Fact the authority which petitioner vested in Lucille. She could draw checks against petitioner's bank accounts and could pay the interest on petitioner's debentures at any time after it became due, either by check or by crediting the personal account of a debenture holder. Furthermore, the debenture holders could receive the interest whenever they wanted it. The interest income was unqualifiedly subject to their demands. See *Fetzer Refrig. Co. & Louisville Cooler Mfg. Co. v. United States,* 437 F. 2d 557 (C.A. 6, 1971) ; *Ross v. Commissioner,* 169 F. 2d 483 (C.A. 1, 1948) ; *James J. Cooney, supra.*

Respondent contends that this case is distinguishable from cases such as *James J. Cooney, supra,* in that no evidence was presented here that petitioner's board of directors had taken any action that would bind the corporation to pay the interest. To the contrary, we feel that no

---

[7] Since Danny Bissett and Bradley, David, and Scott Warren did not have $600 or more of gross income for any of the years 1966, 1967, and 1968, they did not file income tax returns for those years. See fn. 2 of table p. 455.

further corporate action was necessary here. On the record herein, to require petitioner's board to authorize payment of the interest income at issue as a condition to our finding constructive receipt in this case would be a meaningless requirement on our part and an unnecessary gesture on its part since the corporation had already vested Lucille with the authority to pay the interest whenever requested by the debenture holders or whenever she determined to credit it to their personal accounts.

Respondent admits on brief that the "record herein indicates that Ted L. Bissett, * * * [Navada] Bissett and Maxine B. Warren, as the officers and controlling stockholders of the petitioner, had the power, singularly or collectively, to cause the interest in question to have been paid timely." He goes on to assert the following: "However, they elected to take no affirmative action within the statutory period and the *right* to receive payment of the interest was lost." (Emphasis supplied.) To accept respondent's assertion is to emasculate the doctrine of constructive receipt, for, according to his contention, a taxpayer could by his action or inaction be able to determine when he will be taxed on certain income.

We realize that it is the right, rather than the power, to receive income that determines whether such income is constructively received. *Eckhard v. Commissioner*, 182 F. 2d 547 (C.A. 10, 1950) ; *Hyland v. Commissioner*, 175 F. 2d 422 (C.A. 2, 1949) ; *Young Door Co., Eastern Division, supra; Basil F. Basila*, 36 T.C. 111 (1961). Our holding is fully in accord with that principle. The debenture holders had the right to receive the interest income at any time after it became due on January 1 of each year. Nothing in the record indicates that the interest in question was not subject to their unqualified demands thereafter.

Respondent stresses the fact that petitioner did not make book entries crediting the interest income to the personal accounts of the debenture holders until about 12 months after its "Accrued Expense" ledger account was credited therewith. While this is true, it is noteworthy that petitioner's "Accrued Expense" account in question consisted only of the interest in question and salary bonuses due the three controlling stockholders. This fact, coupled with the preparation by Lucille, who had full authority to pay the interest at any time after it became due, of memoranda computing the interest owing each debenture holder, is enough to satisfy the requirements of regulations section 1.451–2(a) that the interest income was "otherwise made available so that * * * [the debenture holders] could have drawn upon it during the taxable year if notice of intention to withdraw had been given."

Respondent has given us the impression throughout his brief that nothing short of book entries crediting the interest to the debenture

holders would constitute constructive receipt in this case. We do not agree with him because book entries are not necessarily the only evidence that a taxpayer has unfettered control of income. *Weil* v. *Commissioner*, 173 F. 2d 805 (C.A. 2, 1949). See also *Helvering* v. *Midland Ins. Co.*, 300 U.S. 216 (1937). Moreover, it has been made clear that negligent or willful delay in making a proper book entry cannot be used to defeat the taxing power. *Acer Realty Co.* v. *Commissioner*, 132 F. 2d 512 (C.A. 8, 1942).

In view of our holding that the interest income in question was constructively received by the debenture holders within 2½ months following the close of each of the years at issue, petitioner does not fall within the terms of section 267(a)(2)(A). Therefore, the interest deductions are allowed to petitioner under section 163. See *Fetzer Refrig. Co. & Louisville Cooler Mfg. Co.* v. *United States*, *supra*.

*Decision will be entered for the petitioner.*